## MINAR RODELIUS COMPANY v. KERMIT LYSEN.[1]

February 4, 1938.

No. 31,592.

*George L. Barnard,* for appellant.
*Ozro Yakey,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action in replevin for the possession of an Oldsmobile coupé was resolved against it by a jury. Its motion for new trial was denied, and the appeal is from that order.

The only claim upon which reversal is based is that the "court erred in permitting the defendant to testify, over objection, that the written contract was not final, and that he had a period of time within which he could cancel the deal if he desired."

[1]Reported in 277. N. W. 523.

150

The record permits the triers of fact to have found that on April 1, 1937, two of plaintiff's salesmen called on defendant at Benson. Plaintiff is engaged in the automobile sales business at Willmar, about 32 miles distant. The usual sales talk apparently was had. It involved the purchase on defendant's part of a new Ford car, he to turn in upon the purchase price his own Oldsmobile coupé as a down payment. There was no delivery of property by either party, and no money changed hands. All defendant did was to sign his name to a purchase agreement in the usual form, and, in addition, sign the sale memorandum appearing upon the reverse side of his automobile license certificate. The instruments were not acknowledged by a notary or any other officer in defendant's presence.

Defendant is a young man, 23 years of age, born and reared on a farm in Pope county; his work at the time this transaction took place was that of a store clerk at Benson. The talk was had and the papers signed during the noon hour in front of the store where he was employed. The alleged objectionable evidence came into the case, in large part at least, without objection. Defendant testified with regard to that conversation as follows (and this appears to have been received without objection) :

Q. "What did you say to him [Mr. Manzer, one of plaintiff's agents] ?

A. "* * * Mr. Manzer said to me that I knew Mr. Haugen well enough so I could sign that card—give him the card—so if we went through with the deal, they would have the card, and if we didn't go through [with] the deal, the card would be returned to me * * * That signature was put on there * * * on the understanding that if I went through [with] the deal, they would have my card down there and they could make a quicker deal, [but if this was not concluded] that card would be returned to me."

That same day, toward evening, defendant went to Willmar and there contacted Mr. Manzer, and this is what took place:

Q. "What did you tell Mr. Manzer?

A. "I told him the deal was off. He said, 'I will see Mr. Rodelius the first thing in the morning.'

Q. "And that was the night of April first?

A. "Yes, sir."

Rodelius for the employer deemed the matter closed. A notary's certificate was procured to defendant's sale memorandum (without defendant's knowledge or consent), sent to the office of the secretary of state, and a new certificate issued to plaintiff. Defendant refused to give up his car, and on April 8 this action in replevin was begun. Plaintiff's attitude is well illustrated by the testimony of Mr. Rodelius: "I had made a deal with him [defendant] and was going to make it stick."

The court in instructing the jury said:

"Plaintiff * * * claims that that contract was in full force and effect and that the deal was consummated and completed in accordance with the contract. But the defendant * * * claims that * * * he had an understanding with the man who represented the plaintiff that *these agreements or these writings were not to go into effect and the deal was not to be closed and considered consummated until the day after * * * and that he had the right to call the deal off within*" that time. (Italics supplied.) "If that arrangement was made between the defendant and the agent or representative of plaintiff, it would be enforceable and binding on the parties, and the defendant would have the right to rely upon it and call the deal off or say that it should not go through."

No objections were made or exceptions taken to the instructions. It is therefore evident that the question of whether the agreement was one operative at the time of signing of the papers or was to be held in abeyance until the next day, dependent upon defendant's decision of what was to be done, was considered by the court to be a fact issue for the jury's determination. The question is whether the court was justified in permitting the oral testimony to come into the case so as thereby to make the issue one for the jury.

■ The general rule is stated in 31 L.R.A.(N.S.) 619, and in L. R. A. 1916B, 1039, as follows:

"It is a general rule that parol evidence is admissible to show that the parties made an agreement before or at the time a written instrument was entered into that it should become binding only upon the happening of a certain condition, the theory being that such evidence merely goes to show that the writing never became operative as a valid agreement, and that there is therefore no variance or contradiction of a valid written instrument."

This question is a troublesome one, as decided cases here and elsewhere abundantly demonstrate. We are required to give effect to the rule stated if the evidence here referred to brings the case within it. While the question as here presented is by no means free from doubt, we think the court properly admitted the oral testimony and left with the jury the fact issue raised thereby. From the facts here appearing it seems plain that there were representations made by plaintiff's agent, relied upon by defendant, that there was not to be a deal at all if within the time limited he should conclude not to go through with the trade. If he had executed a note for the balance of the purchase price and had retained his car, as he did, in line with our prior cases it would seem that defendant could prove the same facts as he did here. In principle we can see no distinction between the two situations.

The following cases are helpful: Westman v. Krumweide, 30 Minn. 313, 15 N. W. 255; Smith v. Mussetter, 58 Minn. 159, 59 N. W. 995; S. F. Bowser & Co. v. Fountain, 128 Minn. 198, 150 N. W. 795, L. R. A. 1916B, 1036; National Finance Co. v. Mitchell, 157 Minn. 47, 50, 195 N. W. 542; 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1937) § 3377, and cases cited. Interesting articles touching upon this phase may also be found in 5 Minn. L. Rev. 287, particularly pages 293 and 294, and 12 Minn. L. Rev. 183; also annotations in L. R. A. 1916B, 1039, where reference is made to prior annotations; (also see 54 A. L. R. 702, and 105 A. L. R. 1346, relating to parol evidence to show that bill or note was conditioned or given for special purpose).

In National Finance Co. v. Mitchell, 157 Minn. 47, 50, 195 N. W. 542, 543, many prior cases of this court are cited and distinguished,

those coming within the rule relied upon by defendant and others upon which plaintiff relies. The distinction is thus summarized (157 Minn. 50):

"In the former oral testimony is admissible as to the condition precedent to the going into existence of a written contract, while in the latter oral testimony as to the condition upon which an existing written contract is to become inoperative is inadmissible as tending to vary the terms of the instrument."

And in Skelton v. Grimm, 156 Minn. 419, 420-421, 195 N. W. 139, the test is stated to be "that the condition, in order to admit the parol evidence, shall be a condition precedent *preventing any contract,* instead of a condition subsequent *avoiding or changing a contract* actually made."

Reference to our own cases will disclose that the fact issue here presented falls within the former classification, not the latter. The rule is well stated in the syllabus of Westman v. Krumweide (30 Minn. 313):

"Parol evidence is admissible to show that a contract not under seal, delivered by the maker to the party in whose favor it runs, was not intended to be operative as a contract from its delivery, but only on the happening of some future contingent event, though that be not expressed by its terms."

■ Nor should we overlook another rule, also of general application, that "delivery is essential to the execution of a contract in writing," and "is the usual method of expressing the final assent of the parties to be bound thereby." Delivery is not in and of itself "conclusive evidence that the contract has become operative," as delivery may be conditional. To make a writing operative as a contract "all the parties" thereto must "have expressed an intention" that such it shall be. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1736, and cases cited under notes 15 and 16.

Nothing more need be said. We think the learned trial court correctly disposed of the matter, and its order in the premises is affirmed.

Affirmed.