# DONALD R. MOELLER v. ST. PAUL CITY RAILWAY COMPANY AND ANOTHER.[1]

October 20, 1944.

No. 33,858.

[1]Reported in 16 N. W. (2d) 289.

*R. T. Boardman* and *C. J. Menz,* for appellants.
*Neil M. Cronin* and *Clifford W. Gardner,* for respondent.

YOUNGDAHL, JUSTICE.

In an action for damages for death by wrongful act, defendants appeal from an order denying their alternative motion for judgment *non obstante* or a new trial.

On February 27, 1943, at about 11:40 p. m., Peter A. Moeller was struck by a streetcar of defendant company and fatally injured while crossing University avenue at Hampden, in St. Paul. He died in the ambulance en route to the hospital. During the day, decedent had been working at the Louis F. Dow Company plant, located on the southeast corner of the intersection. He left his employment about 11:30 p. m. and stood near a mailbox on the southeast corner of the intersection waiting for a westbound streetcar. Shortly before the accident, the night watchman of the Dow company observed him standing near the mailbox, looking in an easterly direction, and also saw him walk toward the curb, step into the street at the crosswalk for pedestrians, and start to walk north across University, but he did not observe decedent after he left the curb.

The evidence shows without dispute that decedent was struck by the right front part of the streetcar and hurled into the air. He landed near the northwest corner of the intersection. The only eyewitness to the accident was the motorman, whose experience in operating a streetcar was of two months' duration. He testified that when the streetcar approached Hampden the automatic semaphore registered the green *"Go"* sign for traffic on University avenue and that the streetcar was then traveling about 25 miles per hour. His testimony as to where he first saw decedent was rather vague and uncertain. Although he was just giving an estimate, he changed his testimony several times. At one time during the trial he

stated that he saw decedent about five to ten feet away and to the left side of the streetcar. Later, he said he saw him about five to ten feet to his left and about 30 feet ahead of the streetcar. Still later, he said he first saw him about 20 to 25 feet ahead and on the southerly rail of the eastbound track. Then again, he stated that he saw him about 25 to 30 feet away. He was not sure whether the streetcar was 15 or 50 feet east of the intersection when he claims to have first seen him. He testified that decedent was running as he approached the tracks and jumped onto the fender as he was struck. He said further that when he saw decedent he released the power and applied the air and sand. He placed the point of impact near the easterly curb line of Hampden and stated that from that point, with the power released and the brakes and sand applied, the streetcar traveled through the intersection and came to a stop with the back end about 35 or 40 feet from the westerly crosswalk of Hampden. The police officers who arrived at the scene shortly after the impact placed the position of the streetcar approximately 200 feet from the point of impact.

From a point several hundred feet east of Hampden there is a decline toward the west in the grade of University avenue, which tapers off in the last block before Hampden to a slight one. On the night of the accident the weather was clear and the street dry.

The motorman's testimony as to speed and where and when he first saw decedent was at variance with a statement he admitted making to the police officers shortly after the accident and at the scene thereof. He then stated that he did not see decedent until he was right in front of the streetcar, and he said nothing about decedent running. He further stated that the streetcar was traveling 15 miles per hour.

■ In defendants' brief and at the oral argument they frankly concede that there was sufficient evidence of defendants' negligence to create a fact issue for the jury. They strenuously contend, however, that decedent was guilty of contributory negligence as a matter of law. The fallacy in defendants' argument is the premise of fact, which we do not believe is justified by the evidence. For

example, defendants assert: "There is no dispute but that this accident happened while Mr. Moeller was crossing University avenue against the semaphore." The fact is that there is a real dispute on this question. Plaintiff denies that the semaphore was at "*Stop*" for decedent when he left the curb. There is no direct testimony on this point. The only basis for defendants' position is the inference which is drawn from the testimony of the motorman, who testified that the sign was on "*Go*" for University avenue traffic as the streetcar approached Hampden. That, in itself, does not conclusively establish that the sign was on "*Stop*" for decedent when he started to cross the intersection. It is just as reasonable to infer that the sign was on "*Go*" for him. He had traversed approximately one-half the width of University avenue from the time he left the curb until the impact, or a distance of approximately 35 feet. The sign may well have been on "*Go*" for him when he left the curb, and changed while he was covering this distance. At any rate, under the circumstances, the fact that the sign read "*Go*" for the motorman as he approached the intersection does not establish without dispute that it read "*Stop*" for decedent when he left the curb.

Then, again, defendants assert: "The undisputed evidence also shows that Mr. Moeller was running as he approached the tracks, and jumped onto the fender as he was hit." Defendants overlook the fact, however, that this testimony was at variance with what the motorman admitted he stated to the police officers at the scene of the accident—a time when his recollection of what transpired should have been better than it was at the trial. He said to them that he did not see the deceased until he was "just in front of the streetcar" and failed to mention anything about decedent running.

Defendants rely upon the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, that the court or jury cannot disregard the positive testimony of an unimpeached witness. In view of the testimony here disclosed, we do not see how defendants can claim the benefit of this rule. Rather, we think, the case comes within one of its exceptions, namely, that such uncontradicted testimony

may be disregarded if, from the facts and circumstances established by the record, its improbability or inconsistency furnishes a reasonable ground for so doing. If testimony contains improbabilities and contradictions which alone, or in connection with other facts and circumstances in the evidence, furnish a reasonable ground for doubting its credibility, a trier of fact need not accept the testimony as true merely because there is no direct evidence contradicting it. 6 Dunnell, Dig. & Supp. § 10344a, and cases cited. There is no disagreement as to the rule itself. The difficulty arises in its application and in the fact that it admits of many exceptions. In the recent case of In re Estate of Calich, 214 Minn. 292, 296, 8 N. W. (2d) 337, 340, we approved the following statement from 20 Am. Jur., Evidence, § 1180:

"* * * Justice does not require a court or jury to accept as absolute verity any statement of a witness not contradicted by direct testimony. Undoubtedly, as a general rule, such testimony should be accepted as controlling,'but that rule admits of many exceptions; there are many things which may properly be considered in determining the weight that should be given direct testimony of a witness although no adverse verbal testimony is adduced. If such testimony is evasive, equivocal, confused, or otherwise uncertain, it may be disregarded. If it is improbable, physically impossible, contrary to physical facts or to laws of nature or scientific principles, or is opposed to common knowledge, inconsistent with other circumstances established in evidence, or contradictory within itself, it is without value and may be disregarded."

Clearly, here, especially in view of the contradictory statement which the motorman admitted making to the police officers, it was for the jury to say whether there was such improbability or inconsistency in his testimony as to furnish a reasonable ground for disregarding it. Implicit in the verdict is the conclusion that the jury refused to accept the motorman's version as to when and where he first saw decedent. That being the case, it would leave a complete void in the testimony as to the conduct of deceased

after he left the curb, so far as any direct evidence is concerned. Defendants had the burden of proving decedent's contributory negligence. Thus, if the testimony of the motorman is disregarded, there was no evidence of contributory negligence, and the burden was not sustained.

But defendants argue that, even disregarding the testimony of the motorman as to the conduct of decedent just prior to the accident, by reasonable inference and circumstantially, the testimony shows that decedent was guilty of contributory negligence as a matter of law. Defendants assert that he was guilty of negligence in failing properly to observe the streetcar, or, if he did see it, in attempting to cross ahead of it. The evidence shows that for several minutes decedent had been standing on the westerly side of the mailbox near the place where he left the curb, looking easterly. Having looked to the east just before he left the curb, it was not contributory negligence as a matter of law if he did not look again. Our most recent expression on this subject is found in Peyla v. D. M. & I. R. R. Co. 218 Minn. 196, 15 N. W. (2d) 518, where we reiterated the rule that contributory negligence as a matter of law is not to be determined by whether a pedestrian looked more than once or by the number of times he looked. The court approved the application of the rule in cases of pedestrians crossing in front of automobiles and streetcars and of automobiles crossing in front of streetcars. We there followed Reier v. Hart, 202 Minn. 154, 157, 277 N. W. 405, 406, where the court said:

"* * * The law has not fixed any hard and fast standard defining the duties of pedestrians crossing streets. Negligence of a pedestrian is not determined by the number of times he looked. The law does not say how often he must look or when or from where. If observation is made before entering the street, failure to look the second time while crossing the street is not necessarily contributory negligence as a matter of law."

In the Peyla case, the court makes the following statement (218 Minn. 205, 15 N. W. [2d] 522):

"* * * If he [the traveler] looks and sees a car approaching at such a distance that he can apparently cross with safety he is not, as a matter of law, guilty of contributory negligence if he attempts to cross without looking again," citing 6 Dunnell, Dig. § 9026, and cases cited in note 49.

Assuming, however, that decedent was observing the movement of the streetcar after he left the curb and that he saw it just prior to the impact, still, under the facts here, it could not be said that he was guilty of contributory negligence as a matter of law in attempting to cross ahead of it. The motorman testified that when the streetcar was 100 feet from the intersection he slowed down and then picked up speed again. Under these circumstances, the jury might well have concluded that decedent had a right to assume that the streetcar was being slowed down to permit him to cross ahead of it. In the Peyla case, we had occasion to consider a similar situation between a pedestrian and a speeder operated by the Duluth, Missabe & Iron Range Railroad Company. At 150 feet from where plaintiff crossed the tracks the speeder was going eight miles an hour, having slowed down when plaintiff first saw it. When it was 50 or 60 feet away from plaintiff, who was then between the rails, it increased its speed to 20 miles per hour. The increase in speed upset plaintiff's calculations and made what appeared to him to be a safe crossing in fact a dangerous one. The court said (218 Minn. 201, 15 N. W. [2d] 521):

"* * * In the instant case, plaintiff exercised his senses to determine whether it was safe for him to cross. He determined in accordance with the facts that it was safe. The crossing was rendered unsafe by defendant's subsequent acts increasing the speed of the speeder and then operating it without maintaining a proper lookout. The rule applicable in such a situation is that, where a person calculates that it is safe to cross the tracks in front of an approaching train, and could as a matter of fact cross safely unless something occurred to prevent it, and undertakes to cross and a collision occurs which is attributable to some occurrence which

hinders or prevents him from getting across the tracks ahead of the train rather than to a miscalculation on his part that it was safe to cross, his attempt to cross in front of the train is not negligence as a matter of law," citing cases.

The court there concluded that under the circumstances the issues of negligence and contributory negligence were fact questions for the jury. Among the cases cited were O'Donnell v. Market St. Ry. Co. 30 Cal. App. (2d) 630, 86 P. (2d) 1077, and Byram v. East St. Louis Ry. Co. (Mo. App.) 39 S. W. (2d) 376, both involving streetcars. The court then went on to say that increasing the speed of the speeder, under the circumstances there, was no different in principle from increasing the speed of streetcars and automobiles under the authorities cited. See, also, Drown v. Minneapolis St. Ry. Co. 199 Minn. 193, 271 N. W. 586, and Watson v. Minneapolis St. Ry. Co. 53 Minn. 551, 55 N. W. 742.

In the case at bar, upon proper instructions, the issue of contributory negligence was submitted to the jury. We hold that the evidence is sufficient to sustain its finding that defendants failed to establish it.

■ Defendants complain because of the submission to the jury of the presumption of law of due care on decedent's part. They rely upon the rule of Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557. The jury in the instant case was instructed that the presumption of due care on decedent's part was one of law and that the presumption vanished if there was direct proof or if there were facts and circumstances which led to the conclusion that due care was not in fact exercised by him. We have recently held in Bimberg v. N. P. Ry. Co. 217 Minn. 187, 198, 14 N. W. (2d) 410, 415, that, even though the presumption is one of law and not of fact, the giving of such an instruction is not inconsistent with the rule laid down in the Ryan case and does not "taint the jury's verdict."

Furthermore, defendants are not in a position to assert this objection, because of their request for certain instructions. By No. IX,

defendants requested the court to charge that the presumption of due care on the part of deceased was entirely rebutted by the evidence. We have already pointed out that the record does not justify such a contention. Then, by No. X, defendants requested that, in the event the court denied No. IX, it charge the jury that, in cases where the party injured dies as a result of the accident, there is a presumption that he was free from negligence, but, if the evidence shows the deceased was negligent, that presumption disappears. Thus it appears that defendants themselves requested that the rule as to the presumption of law of due care be submitted to the jury in the event request No. IX was denied.

The instruction given was substantially as requested by defendants' No. X. We therefore find no merit in this claim of error.

■ Defendants also urge as error the submission to the jury of Minn. St. 1941, §§ 169.14, subd. 3, and 169.21, subd. 3 (Mason St. 1940 Supp. §§ 2720-178[c] and 2720-204[d])[2], on the ground that they are inapplicable to streetcars. No exception was taken to this part of the charge. In Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97, certain statutes relating to slow driving and the driving of unsafe vehicles on a highway were held not to be controlling propositions of law, and, even though inapplicable, the reading of them to the jury, absent any exception to the court's charge, was held not to constitute error. Defendants are therefore foreclosed from now making this claim.

---

[2]"169.14, subd. 3 [2720-178(c)]. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

"169.21, subd. 3 [2720-204(d)]. * * * Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and give warning by sounding the horn when necessary and exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

■ Defendants further urge as error the admission of the testimony of an expert witness as to the speed of the streetcar, on the ground that it was an opinion based on an opinion and also because there was lack of foundation for such testimony. The witness graduated from the University of Minnesota in 1938 with an M. A. in civil engineering and at the time of trial was associated with a testing laboratory on engineering problems. He testified that the speed of the streetcar was 39 miles per hour, based on the testimony of one police officer as to the position of the streetcar, and 40 miles per hour, based on the testimony of the other police officer.

The record shows that the opinion was based upon the assumption of certain facts and not upon an opinion. The witness was asked to assume as true the testimony of the motorman that the impact occurred at the easterly curb line of Hampden and that at that point the power was released and the brakes applied. He was also asked to assume as true the testimony of the police officers as to the place where the streetcar was when it came to a stop. The opinion was therefore based upon facts that appeared in the evidence and not upon an opinion. .

In arriving at his opinion as to the speed of the streetcar, the witness used a certain formula called the "coefficient of friction." One of the factors in the calculation has to do with the application of steel on steel, such as the wheels of a streetcar upon the rails. The foundation was not satisfactory as to the various factors used in this formula and its application. The court would have been justified in excluding the testimony until the formula had been more adequately described. In view of the other testimony on speed hereinafter referred to, however, and in view of the opportunity afforded counsel for cross-examination, we conclude that, although the foundation was weak and unsatisfactory, its adequacy was within the discretion of the trial court.

Any person of ordinary ability and intelligence having the means or opportunity of observation is competent to testify to the rate of speed at which an automobile, locomotive, or other object was

moving at a given time. Such estimate of speed is generally viewed as a matter of common observation rather than expert opinion. Because speed is generally not considered a matter of expert opinion, it does not mean that experts cannot testify to it, but merely that when they do their testimony is received not as an exception to the opinion evidence rule made in cases calling for expert evidence, but under the exception existing when it is impossible to reproduce data. 20 Am. Jur., Evidence, § 805.

The fact that the expert did not see the streetcar in operation would not make him incompetent to give testimony concerning its speed. The speed at which a vehicle is being operated may, like any other fact, be established by circumstantial evidence. In a number of cases experts have been allowed to give opinions as to rate of speed, based not upon their observation of the moving vehicle, but upon skid marks or other impressions made just before or at the time of the accident or collision. Jackson v. Vaughn, 204 Ala. 543, 86 So. 469 (expert witness permitted to testify as to the speed of automobile when it started to skid, basing his opinion upon the distance it skidded and dragged forward); McCarthy v. Souther, 83 N. H. 29, 137 A. 445 (expert permitted to testify as to speed of automobile based on fact that handle of car door, which decedent struck, was broken by the impact); Luethe v. Schmidt-Gaertner Co. 170 Wis. 590, 176 N. W. 63 (expert permitted to give opinion as to speed at which truck was traveling when brakes were applied, based upon skid marks of truck wheels). In Stamper v. Scholtz (Tex. Civ. App.), 29 S. W. (2d) 883, 884, the court stated:

"* * * Almost any person acquainted with the movement of cars when brakes are applied suddenly would be competent to give an opinion from the marks of the skidding and other circumstances as to the speed of the automobile."

In Fannon v. Morton, 228 Ill. App. 415, the court held it was not error to admit an expert's testimony as to the speed of the defendant's car based on the distance which the car, with its brakes set and its wheels locked, slid on the pavement after the impact. In

Heidner v. Germschied, 41 S. D. 430, 171 N. W. 208, even a non-expert, who had not seen the car in motion, was permitted to give an opinion as to the speed of an automobile based on an examination of the marks left by it when it skidded.

Defendants complain that the expert should not have been permitted to testify, because he had not operated a streetcar and was not familiar with its weight and the braking apparatus. We believe this went to the probative value of his testimony rather than to its competency. In Hall v. Slaton, 40 Ga. App. 288, 149 S. E. 306, a witness was permitted to give an opinion as to the speed of an automobile which collided with a wooden bridge, his opinion being based on his observation of the condition of the timbers of the bridge. It was held that his testimony was not rendered inadmissible by the fact that the witness was not acquainted with the size and weight of the particular automobile which caused the damage.

Expert opinion has been permitted in this state in a number of situations such as speed of moving objects, physical condition, value, etc. State v. St. Paul City Ry. Co. 196 Minn. 456, 265 N. W. 434. Cf. Blomquist v. C. M. & St. P. Ry. Co. 60 Minn. 426, 62 N. W. 818 (defective derrick); Peterson v. Johnson-Wentworth Co. 70 Minn. 538, 73 N. W. 510 (practicality of guarding machinery); Sloniker v. G. N. Ry. Co. 76 Minn. 306, 79 N. W. 168 (stopping of a handcar); Fonda v. St. Paul City Ry. Co. 77 Minn. 336, 79 N. W. 1043 (distance within which streetcar could be stopped). In Spino v. Butler Bros. 113 Minn. 336, 129 N. W. 590, there was involved the issue as to the safety of exploding dynamite. The fact that the witness there had never used or seen the method in question did not disqualify him. In Olthoff v. G. N. Ry. Co. 135 Minn. 72, 160 N. W. 206, in which was determined the distance within which a train might have been stopped, a witness was held qualified though not a trainman or engineer. In Lestico v. Kuehner, 204 Minn. 125, 132, 283 N. W. 122, 126, we held it error not to admit expert testimony of a mechanic with "lots of experience with tires" to testify as to whether air was suddenly deflated or gradually let out of the

punctured tire. A wide latitude of discretion is given the trial court in the determination of the admission of expert testimony. 2 Dunnell, Dig. & Supp. § 3325, and cases cited.

We see no justification for disturbing the trial court's determination that the witness here was competent to testify. Even assuming lack of foundation, defendants could not be seriously prejudiced by the testimony. Aside from the expert's testimony as to speed, there was other testimony from which the jury could find that the streetcar traveled substantially 200 feet from the time the power was released and the air and sand applied before it came to a stop. One of defendants' own witnesses testified that the streetcar was traveling 25 to 30 miles an hour just before the impact. Without the benefit of the testimony of the expert witness, the jury might well have found excessive speed. Therefore, we are unable to see any prejudice warranting a new trial. In Palmer v. Order of U. C. T. 191 Minn. 204, 253 N. W. 543, we held that the trial court's determination of the qualifications of an expert witness should stand unless it clearly appears that the knowledge and experience of the witness is no aid to the trier of fact, and that an erroneous determination should not be ground for a new trial unless prejudice results to the losing party.

■ Defendants finally assert that the verdict of $8,925 is excessive. At the time of his death Mr. Moeller was about two months past 64 years of age. Based on the American Experience Table of Mortality, at 64 Mr. Moeller had an expectancy of 11.67 years, and at 65 a probable duration of 11.10 years. Based on the Table of Standard Annuitants at 64, his expectancy was 14.93 years and at 65, 14.41 years. He was in good health, possessed of moderate habits, and had amply provided for his family. His wife, 61 years of age, and seven children, all of age, survive him. His average earnings were about $30 per week at the time of his death, and his yearly income during the last few years varied from $1,000 to $2,500. He was drawing a pension of $60 a month as a Spanish-American War veteran. After his death, this pension, payable to his widow, was reduced to $30 per month. The widow's expectancy

as an annuitant at 61 was 20.31 years, and at 62 it was 19.61 years. Based on the American Experience Table of Mortality, at 61 it was 13.47 years and at 62, 12.86 years.

In Thoirs v. Pounsford, 210 Minn. 462, 465, 299 N. W. 16, 18, we approved a verdict for $10,000 where decedent was 67 years old at the time of her death and had two sisters surviving her, 63 and 60 years of age. But as we there said: "Comparison of verdicts is not a satisfactory method for determining the reasonableness of an award in a particular case. * * * Each case has its own peculiar facts which control decision." The various factors to be taken into consideration are there thoroughly and exhaustively discussed. Having in mind the variables to be considered which are characteristic of this case, we feel we should be encroaching upon the jury's prerogative as the trier of facts were we to disturb this verdict.

Affirmed.

