## DODDS *v.* PURDY.

1. PARTIES—SUIT TO CANCEL MORTGAGE—ADMINISTRATORS—PLEADING.
    Suit to cancel mortgage and sheriff's deed given on foreclosure thereof *held,* brought in behalf of plaintiff individually and not in his representative capacity where, although bill of complaint recited he was appointed and qualified as administrator of his mother's estate and such fact was admitted, bill was signed in his individual name and in verification he stated he was plaintiff.

2. CANCELLATION OF INSTRUMENTS—EVIDENCE—FRAUD.

Evidence in suit to cancel mortgage and sheriff's deed given on foreclosure thereof *held,* insufficient to justify decree for plaintiff on ground of fraud.

3. HOMESTEAD—TERMINATION BY DEATH.

Death of widow terminates her homestead right.

4. MORTGAGES—CONSIDERATION—MENTAL INCOMPETENCY.

Mortgage conveyance by widow who had either an inchoate right of dower or an inherited interest in 40-acre farm she and her late husband had occupied as homestead *held,* only voidable, and not void, where given for a valuable consideration notwithstanding her mental incompetency at time it was given (3 Comp. Laws 1929, § 13440).

5. SAME—CANCELLATION—EQUITY.

Plaintiff in suit to cancel mortgage and sheriff's deed given on foreclosure thereof *held,* not entitled to equitable relief where, as result of his offer to do equity he would have to pay sum to mortgagee greater than property is worth.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—VALIDITY OF DEED.

On appeal from denial of equitable relief to one seeking to cancel mortgage and sheriff's deed given on foreclosure thereof because of mental incompetency of one of the aged mortgagors at time of execution, question of validity of deed, given plaintiff the next day by such mortgagors, and under which he asserts title, is not considered.

7. SAME—QUESTIONS REVIEWABLE—ACTION—PLEADING.

In suit to cancel mortgage and sheriff's deed given on foreclosure thereof, affirmance of decree for defendants is not rested on question of plaintiff's right to bring suit in his own name where question was not urged in trial court nor briefed here although record fails to show plaintiff's right to bring suit in either individual capacity or as administrator of estate of his widowed mother who had occupied premises as homestead.

SHARPE, J., dissenting.

Appeal from Oakland; Doty (Frank L.), J. Submitted July 20, 1936. (Docket No. 119, Calendar No. 38,983.) Decided November 9, 1936.

Bill by Samuel J. Dodds, administrator of the estate of Sarah Dodds, deceased, against C. Henry Purdy, receiver of First State Savings Bank of Birmingham, and another to cancel a mortgage and a sheriff's deed and for an injunction. Bill dismissed. Plaintiff appeals. Affirmed.

*Cole & Cole,* for plaintiff.

*Preston Allen,* for defendant Purdy.

*Donald E. McAleer,* for defendant Wentworth.

NORTH, C. J. Plaintiff by bill in equity seeks cancellation of a mortgage and of a sheriff's deed given on foreclosure of such mortgage. The circuit judge after a hearing on the merits dismissed the bill of complaint. Plaintiff has appealed.

The mortgage covered a 40-acre farm in Troy township, Oakland county, which farm at the time the mortgage was given (January 30, 1930) was occupied as a homestead by the mortgagor, William John Dodds, and his wife, Sarah Dodds. On that date title was in William John Dodds; but on the following day by conveyance to a third party and reconveyance to Mr. and Mrs. Dodds they purported to take title as joint tenants. The mortgage in the principal sum of $2,600 was given to the First State Savings Bank of Birmingham for money then and theretofore loaned to Mr. Dodds. Some of the borrowed money, the record does not disclose how much, was used to pay taxes on the Dodds' farm. Plaintiff's bill alleges his father borrowed money from the bank with which to pay the 1928 and 1929 taxes. At the time of giving the mortgage both Mr. and Mrs. Dodds were well advanced in years. Mrs. Dodds had suffered two or three paralytic strokes

and her right side was paralyzed. She was assisted in signing the mortgage by placing "her mark" thereon. The death of Mr. Dodds occurred prior to that of his wife. She died June 14, 1934. Prior to her death the mortgagee, then in the hands of a receiver, instituted statutory foreclosure of the mortgage which resulted in a foreclosure sale on January 18, 1932. The year of redemption expired approximately a year and five months prior to the death of Mrs. Dodds. While there was no redemption of the mortgaged property, by the payment of rental at the rate of $100 per year Mrs. Dodds and. her son, the plaintiff in this case, were permitted to remain in possession of the farm after the expiration of the period of redemption. While plaintiff recites in his bill of complaint that he was appointed and qualified as the administrator of the estate of Sarah Dodds, deceased (and this fact is admitted), still the bill of complaint is clearly one by Samuel J. Dodds in his own right, and not in any other capacity. His pleadings are signed in his individual name and in the verification under oath he states "that he is the plaintiff in the within suit."

The ground upon which plaintiff seeks cancellation of the mortgage and the sheriff's deed is alleged in his bill of complaint as follows:

"That said mortgage is invalid, void and of no effect, the signature of Sarah Dodds thereto having been obtained by fraud and duress, and further that Sarah Dodds was not competent to execute said instrument at the time same was presented to her, nor was the said Sarah Dodds mentally competent at any time thereafter up to and including the day of her death."

It is further alleged in plaintiff's bill of complaint:

"That the plaintiff is willing and hereby offers to do equity in the premises, fully realizing that plaintiff's parents borrowed certain moneys from the First State Savings Bank of Birmingham."

The mortgage and mortgage notes evidence the fact that they were given to secure repayment to the bank of a valid indebtedness in the principal sum of $2,600. There is nothing in the record of probative force indicating that there was not an actual indebtedness in the amount of $2,600 for money loaned. The record convincingly discloses that the fair value of this farm does not exceed $50 per acre, or a total of $2,000. After the period of redemption expired and title had become absolute in the bank, it sold this property to the defendant Elmer R. Wentworth for $1,200, a $600 down payment being made on the contract. We think it quite conclusively appears from this record that the mortgage indebtedness, which plaintiff must repay if he is to do equity, is substantially in excess of the fair value of the mortgaged property.

For the purpose of decision herein we may assume, as plaintiff asserts, that Mrs. Dodds at the time the mortgage was executed was mentally incompetent. The circuit judge so found. If plaintiff is to have any relief at all, it must be on this ground, because the evidence in the record does not sustain plaintiff's allegation of fraud or duress.

At the time the mortgage was given there were no minor children and Mrs. Dodds' interest in the land at most was then only that of a homestead right or an inchoate right of dower. So far as her homestead right is concerned, it was terminated by reason of her death prior to the filing of the bill of complaint herein. *Drake* v. *Kinsell*, 38 Mich. 232; *Matson* v. *Melchor*, 42 Mich. 477. Even if it be as-

sumed that upon her husband's death her inchoate right of dower became vested or that she inherited an interest in the land (3 Comp. Laws 1929, § 13440) still as to such interest her mortgage conveyance for a valuable consideration was not void, but only voidable, notwithstanding she may have been mentally incompetent at the time the mortgage was given. *Moran* v. *Moran,* 106 Mich. 8 (58 Am. St. Rep. 462) ; *Wolcott* v. *Connecticut General Life Ins. Co.,* 137 Mich. 309 ; *King* v. *Sipley,* 166 Mich. 258 (34 L. R. A. [N. S.] 1058, Ann. Cas. 1912 D, 702) ; *Cochran Timber Co.* v. *Fisher,* 190 Mich. 478 (4 A. L. R. 9). Under the circumstances plaintiff in equity would be bound to do equity; and as noted above, he has offered in his bill of complaint to do equity. But, under the facts of this case, we are unable to find that any wrong or injustice has resulted to plaintiff, or that there is any practical relief that can be given him because of the fact that it quite conclusively appears the mortgage indebtedness, which in equity he would have to pay the defendant bank, is decidedly in excess of the actual value of the mortgaged property. In other words plaintiff has not made a case from which it appears he is entitled to any equitable relief. Therefore, we conclude that the trial judge arrived at the right result in dismissing the bill of complaint.

In view of the foregoing we refrain from commenting upon the fact that under the bill of complaint as drawn whatever rights plaintiff asserts must be so asserted on the theory that a deed executed by Mr. and Mrs. Dodds the day after they executed the mortgage was a valid deed; in other words, that Mrs. Dodds was mentally competent to make a valid deed of this same farm the day after she executed the mortgage, which plaintiff claims

was invalid because of Mrs. Dodds' mental incompetency.

Also, because it does not seem to have been urged in the court below nor is it stressed in the briefs filed in this court, we do not rest decision upon the question of plaintiff's right to bring this suit in his own name. It does not appear whether Mrs. Dodds died testate or intestate. It does appear from the record that plaintiff is not the only one of Mrs. Dodds' children who survived her. If the suit is prosecuted by plaintiff as an heir at law, obviously the other heirs are necessary parties. If, as counsel seems to assume, plaintiff filed this bill as the administrator of Mrs. Dodds' estate, the bill fails to allege the necessary facts to enable the administrator as such to prosecute this suit, which is an attempt to restore to the estate of Mrs. Dodds or to her heirs title to real property. *Pratt* v. *Millard,* 154 Mich. 112; *In re Chipman's Estate,* 235 Mich. 130; *In re Thompson's Estate,* 241 Mich. 583.

The decree entered in the circuit court is affirmed, with costs to appellees.

FEAD, WIEST, BUTZEL, BUSHNELL and TOY, JJ., concurred with NORTH, C. J.

SHARPE, J. (*dissenting*). This is an action brought by Samuel J. Dodds, administrator of the estate of Sarah Dodds, deceased, to set aside a statutory mortgage foreclosure of homestead property. The facts are as follows: For many years prior to January 30, 1930, William John Dodds and wife, Sarah Dodds, lived on a farm in Troy township, Oakland county, and William John Dodds had for some time been doing business with the defendant bank and had borrowed money, some of which was used to pay taxes on the farm. The loans made by the bank to

William John Dodds were without security except the borrower's personal note.

On January 30, 1930, Thomas Cobb and Arthur Peck, officers of defendant bank, went to the Dodds home and obtained a mortgage on the premises. This mortgage was signed by William John Dodds. It also appears from the record that Sarah Dodds at the time of the signing of the mortgage was totally incompetent to execute such an instrument, made no response to any questions asked of her, could not make the cross for her signature, and the same was done by T. Cobb who took the pen, placed it in her hand, and made the cross for her. Sometime afterwards William John Dodds died leaving Sarah Dodds, his widow, with no minor children. Sarah Dodds died June 14, 1934. On October 22, 1931, the receiver of defendant bank instituted proceedings to foreclose the mortgage and the property was sold January 18, 1932, the deed becoming operative January 18, 1933.

Plaintiff, Samuel J. Dodds, for many years had lived with his parents on the farm and after the foreclosure sale attempted the purchase of the property from the receiver of the bank and during the negotiations the receiver sold the property to Elmer R. Wentworth for the sum of $1,200 plus unpaid taxes with a down payment of $600. When defendant Wentworth attempted to obtain possession of the property plaintiff resisted and brought the present action. The trial court, after hearing the testimony, dismissed plaintiff's bill of complaint.

Plaintiff appeals and contends that because Sarah Dodds was incompetent to execute any instrument at the time the alleged mortgage was executed, the same should be declared void *ab initio;* and that plaintiff is not now estopped from asserting the incompetency of his mother as of that date.

The trial court found that on January 30, 1930, when William John Dodds and Sarah Dodds, his wife, apparently executed the mortgage in question, Sarah Dodds was incompetent; that the officials of the bank taking the mortgage acted in good faith and that they were not advised of Sarah Dodds' condition; and that the conduct of plaintiff and the members of the Dodds family, at the time the mortgage was given, precludes them from taking advantage of the present situation and estopped them from relying upon the incompetency of Sarah Dodds at the time of the execution of the mortgage.

The record shows that Sarah Dodds was totally paralyzed on the right side; that she was 82 years of age; and that on the day Mr. Cobb and Mr. Peck came for the purpose of getting a mortgage on the farm, Mrs. Dodds said nothing when asked to sign the mortgage, then Mr. Cobb took her hand and made a mark on the paper. Under such circumstances, the conclusion is irresistible that at the time above mentioned, the bank officials knew or should have known that Mrs. Dodds was incompetent to execute a mortgage, nor is the position of the bank strengthened by the failure of these officers to testify at the trial. From the above facts we must limit the question to whether or not, the property being homestead property, the signature of the wife is necessary to make a mortgage a valid one and subject to statutory foreclosure.

In the early case of *Dye* v. *Mann,* 10 Mich. 291, 297, the court said:

"The State Constitution provides that a mortgage or other alienation of the homestead therein mentioned, 'by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same.' "

In *Sherrid* v. *Southwick,* 43 Mich. 515, the court said:

"But the Constitution after indicating what land shall be exempted as a homestead, declares that a 'mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same.' Const. 1850, art. 16, § 2. A thing not valid is void; and a security void is incapable of enforcement. The Constitution in terms declares that the 'land and dwelling-house thereon' constituting the homestead, shall not be sold or mortgaged unless the wife of the owner, if he have one, unite with him in the act that disposes of or incumbers it."

And again in *Shoemaker* v. *Collins,* 49 Mich. 595, we said:

"The Constitution makes a mortgage thus executed without the wife's signature void. *Sherrid* v. *Southwick,* 43 Mich. 515. The husband having no capacity to make it by direct and formal act, could not do so indirectly by mere admission. It was therefore just as void after the foreclosure decree as before. To protect the rights of the family in the homestead it was proper that the husband and father should be joined as complainant, but the decree which secures them is for the benefit of the family, and not specially in his interest. The death of the wife made no difference; it could not make valid what was void before."

See, also, *First National Bank of Buchanan* v. *Twombly,* 265 Mich. 555.

It is the rule in Michigan that a mortgage given on a homestead in which mortgage the wife does not join is absolutely void and unenforceable.* In the instant case the mortgage was void and being so

* See Const. 1908, art. 14, § 2.—Reporter.

there could be no valid foreclosure of it, nor does the subsequent death of Mrs. Dodds give life and validity to the mortgage.

Defendants also contend that the conduct of plaintiff and other relatives of Sarah Dodds constitutes estoppel. We do not think so. At the time the alleged mortgage was being executed, the plaintiff was present but had no such interest in the homestead as would justify him in the prevention of the execution of the mortgage; and when he told the bank officers that his mother could not hold the pencil or make a mark or write her name because she neither knew nor was able to, he did all that he had any right to do.

"It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." 11 A. & E. Encyc. Law (2d Ed.), p. 434.

We fail to find that the plaintiff did any act which misled defendant bank in securing the claimed mortgage or in the subsequent sale of the property to Wentworth and for the reasons above stated the decree of the lower court should be reversed, the mortgage canceled and all subsequent proceedings relating to its foreclosure be held void and of no effect. Plaintiff should recover costs.

POTTER, J., did not sit.