CAROLAIDE E. DROWN v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

February 13, 1937.

No. 31,081.

[1]Reported in 271 N. W. 586.

*Mark F. Crotty* and *C. E. Warner*, for appellant.
*Ralph T. Boardman* and *John F. Dulebohn*, for respondent.

HILTON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial in a personal injury action after a directed verdict for defendant.

About one block beyond the Great Northern depot in Minneapolis, Hennepin avenue, coming from a northwesterly direction, merges into Nicollet avenue coming somewhat from the south. The two avenues then proceed as one very wide street, about 104 feet across, along the front of the depot and to a bridge crossing the Mississippi river, where they both narrow into one usual width street and become East Hennepin avenue. Streetcar tracks coming east off Hennepin avenue are laid about 15 feet north of the center line where the two avenues first merge into one. In such manner the tracks extend along the front of the depot. Immediately in front of the entrance thereto and along each side of defendant's tracks is a cement safety aisle, raised about six inches above the pavement level, for the use of passengers getting off and on defendant's streetcars. After passing between these safety aisles, the tracks turn sharply to the right toward the aforementioned bridge over which they cross. There is a space of about 30 to 35 feet between the most northerly of the safety aisles and the curb line near the depot. This space, which merely is a part of the wide extension of the two avenues, is used for a loading zone for people going and coming from the depot. There are some cab stands along the curb line thereof. Traffic passing on through Hennepin or Nicollet avenue from East Hennepin avenue off the bridge is directed by a standard yellow highway sign, marked "turn," to proceed to the left so as to avoid passing through this loading zone. There is also a broad yellow mark painted on the pavement from the northwest corner of the bridge to the safety aisle on the south side of defendant's tracks, a distance of about 175 feet. Obviously this can be only a directional line to keep the traffic to the left of the loading zone. Obedience to these traffic regulations of necessity causes anyone driving westward off the bridge to cross the streetcar tracks.

On September 8, 1934, at about 8:30 a. m., plaintiff was driving westerly on East Hennepin avenue. She came across the bridge, turned slightly to the left as directed by the traffic regulations, with the intention of crossing defendant's tracks. As she left the bridge she was following a small truck at a distance of about 15 to 20 feet and was traveling at a speed of 12 to 15 miles an hour. At this time a streetcar, headed easterly, was at a stop taking on passengers at the south safety aisle. Plaintiff testified that, staying close to the aforementioned yellow line, she proceeded to drive in a westerly direction across the tracks; that as she was nearly across them she, for the first time, noticed that the streetcar was moving toward her; that it was then only 15 to 20 feet away and apparently gaining momentum; and that she attempted to accelerate somewhat to escape what obviously appeared to be an impending collision but could not because of the truck in front of her. The right front door of the streetcar, which is along the side and several feet back of the very front thereof, extends about 22 inches out from the tracks. It struck the right rear wheel of the plaintiff's car, causing the latter to turn over. Plaintiff was seriously injured. The lower court, after the close of all the evidence, directed a verdict for defendant.

In a situation such as this it is elementary that the facts must be construed in the light most favorable to plaintiff. In support of her claim plaintiff cited Wegmann v. Minneapolis St. Ry. Co. 165 Minn. 41, 205 N. W. 433. The facts of that case were: University avenue extends east and west with streetcar tracks laid down the center; Washington avenue comes into University avenue from the southwest but does not cross it; the streetcar tracks turn southerly off University avenue and proceed along Washington avenue; Wegmann, proceeding east on University avenue, started to cross the streetcar tracks, turning into Washington avenue, and as he was nearly across them a streetcar, coming east on University avenue, struck the rear end of his car, injuring him and others. There, after the jury brought in a verdict for Wegmann, the lower court granted defendant judgment notwithstanding the verdict. On appeal there was a reversal in this court. It was there stated [165 Minn. 43]:

"The situation was one calling for care on the part of the plaintiff [Wegmann] and of the motorman. They were in or closely approaching the danger zone. The evidentiary facts are in dispute. Different men might draw different inferences from them. The jury might find that both were negligent, or the plaintiff alone, or the motorman alone, or neither of them."

That would seem to be true here. If anything, the facts are more favorable in this case to plaintiff than they were to Wegmann. Here the streetcar was stopped, taking on or discharging passengers, according to plaintiff's story, at the time she left the bridge with the intention of crossing the tracks over which the streetcar had to come when it started up. In the Wegmann case the streetcar was moving all the time; apparently there was nothing which might have caused Wegmann to believe that it was going to stop for him. There it was clearly evident that he had to cross its path at a time when it was moving toward him. Certainly, if the question was one for the jury in that case it also was in the instant case, provided plaintiff's version of the happening of the accident is the correct one.

Defendant urges that plaintiff was contributorily negligent as a matter of law as she might have avoided the collision had she turned or stopped her car. There was testimony that she could not turn to the left because of the truck in front of her and the traffic coming from the other direction on Hennepin and Nicollet avenues and that had she turned to the right or stopped, she would have placed herself squarely in front of the oncoming streetcar. Had she disregarded the police regulations and traffic directions when she came off the bridge and driven through the loading zone, she would not have crossed the tracks at all. However, there would have been no justification for violation of the regulations at that point, for at that time there seemingly was no apparent danger. It was not only her right to proceed in the direction she did, but it was her duty.

As to whether defendant's streetcar was negligently speeded up after plaintiff had signified her intention of crossing the tracks (there was some testimony to that effect) and as to whether plaintiff was contributorily negligent in proceeding to cross those tracks

at a time when it was probable that the streetcar might come along undoubtedly are both questions of fact to be answered by the jury under the decision of the Wegmann case. There is no claim that the decision there was wrong.

The order appealed from is reversed with directions to the lower court to grant the motion of plaintiff for a new trial.

Reversed.

HOLT, JUSTICE (dissenting).

With ample space to turn either to the left or the right, I think plaintiff was guilty of negligence in striking the streetcar.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Holt.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

