# THOMAS W. ROGERS v. MINNEAPOLIS STREET RAILWAY COMPANY.
## KATHRYN McGOVERN AND ANOTHER v. SAME.[1]

November 17, 1944.

No. 33,836.

[1]Reported in 16 N. W. (2d) 516.

*Ralph T. Boardman* and *John F. Dulebohn,* for appellant.
*John J. Kelly,* for respondents.

PETERSON, JUSTICE.

In separate actions, plaintiff Rogers recovered a verdict for personal injuries, and plaintiffs McGovern and Rogers, copartners doing business as the American Ambulance Company, recovered a verdict for property damage occurring as the result of a collision between a streetcar and an ambulance owned by the partnership in which Rogers was riding. Defendant appeals in each case.

The collision occurred just before noon on February 8, 1943, in the intersection of Franklin and Chicago avenues in Minneapolis. Franklin avenue extends east and west; Chicago avenue, north and south. Both streets have double streetcar tracks. There is an automatic traffic control device in the center of the intersection.

The ambulance was equipped with three red lights, one on each side directly above the windshield and a so-called siren or flasher light in the middle between the other two, and with a siren capable of making a loud sound and running for two minutes at a time. The case was tried upon the assumption that the ambulance was an "authorized emergency vehicle" within the meaning of § 169.01, subd. 5 (§ 2720-151[4]). The court instructed the jury that the ambulance was such a vehicle. In its charge the court in effect told the jury that it was conceded that the ambulance was an authorized emergency vehicle and that at the time of the collision it was on an emergency mission. Those instructions were not challenged at the trial or assigned as error in the motion for new trial. Apparently, upon the hearing of the motion for a new trial, defendant orally raised the point that the court's instruction that the ambulance was an authorized emergency vehicle was erroneous. The court overruled the point upon the grounds that raising it after trial involved a change of position contrary to the one taken by defendant during the trial.

At the time of the collision the ambulance was being used to convey to a hospital a patient who was in a serious condition from a lung hemorrhage. The ambulance was going east on Franklin avenue, straddling the most southerly streetcar rail, with its red lights on and the siren sounding. Its speed was from 20 to 30 miles per hour, except at intersections, where the speed was reduced to 15 to 20 miles per hour. When it was about a block west of Chicago avenue, the "Stop" signal in the intersection was against it. Thereupon the driver of the ambulance slowed down. He took his right foot off the gas pedal, put his left foot on the siren pedal to keep it sounding, and "coasted" to the intersection, which he entered at a speed of about 15 miles per hour. Other vehicles on the street, as required by § 169.20, subd. 5 (§ 2720-200[a]), yielded the right of way, and the intersection was clear of all traffic.

The streetcar, going south on Chicago avenue, stopped at the north side of Franklin avenue. After making an observation to his right, from which direction the ambulance was coming, but

without either seeing or hearing it, the motorman proceeded across the intersection with the *"Go"* signal in his favor. The motorman testified that when the front of the streetcar was at or a little south of the center of the intersection he heard the siren for the first time; that he then saw the ambulance about 25 or 30 feet west of Chicago avenue; and that the collision occurred before he could stop. The driver of the ambulance testified that he first saw the streetcar when it was in the intersection and he was about 35 or 40 feet therefrom. At that time the ambulance was going about 15 or 20 miles per hour. The driver applied the brakes, but did not succeed in stopping so as to avoid a collision. The ambulance hit the side of the streetcar at a point about one-third its length from the front.

There was considerable dispute as to whether the red lights on the ambulance were on and whether the siren was being sounded. We adopt the version favorable to the verdict and have so stated it. Defendant's evidence was to the effect that the motorman, the conductor, a passenger, and the operator of a nearby store did not hear the siren until almost at the moment of the collision, and consequently that it was not audibly sounded. The ability of the first three to hear was interfered with by noises from an air pump on the streetcar. Persons in other stores at the intersection and drivers of other vehicles testified that they heard the siren and saw the red lights.

On appeal, defendant contends (1) that the ambulance was not an authorized emergency vehicle; (2) that defendant was not negligent as a matter of law; and (3) that plaintiffs were guilty of contributory negligence as a matter of law.

■ Since the trial court gave the instruction that the ambulance was an authorized emergency vehicle upon defendant's concession that it was such in fact, it was precluded from taking a different position after the verdict.

"* * * A party is concluded by an instruction given in accordance with the theory upon which he conducted his case." 5 Dunnell, Dig. & Supp. § 7169, and cases cited in note 95.

■ The duties of the parties are regulated by statute. The streetcar ordinarily would have had the right to proceed with the "*Go*" signal. A streetcar may proceed through an intersection when it has the "*Go*" signal. Section 169.06, subd. 5(a)(1) and (e), (§ 2720-164[a]1 and [e]). Vehicles facing a "*Stop*" signal are required to remain standing until given a "*Go*" signal. Section 169.06, subd. 5(c)(1), (§ 2720-164[c]1). Other statutory provisions applicable to authorized emergency vehicles restrict and qualify the right of a streetcar to proceed with a "*Go*" signal under certain conditions. The driver of an authorized emergency vehicle, when responding to an emergency call, upon approaching a red or "*Stop*" signal is required to "slow down as necessary for safety, but may proceed cautiously past" the signal "after sounding siren and displaying red lights." Section 169.03 (§ 2720-155[b]). Upon the immediate approach of an authorized emergency vehicle giving an audible signal by siren, it is the duty of the motorman of a streetcar immediately to stop the car clear of any intersection and keep it in such position, until the authorized emergency vehicle has passed, except when otherwise directed by a police officer; but the driver of the authorized emergency vehicle is not relieved from the duty to drive with due regard for the safety of others using the highways. Section 169.20, subd. 5 (§ 2720-200[a, b, c]). A violation of the statutory provisions cited is declared to be prima facie evidence of negligence in a civil action. Section 169.96 (§ 2720-291). All the statutory provisions cited are part of the highway traffic regulation act, § 169.97 (§ 2720-292), and consequently should be construed together. So construed, it is obvious that the right of way ordinarily accorded to vehicles having the "*Go*" signal at an intersection where traffic is controlled by a traffic control signal is restricted and qualified by the requirement that, upon the approach of an authorized emergency vehicle giving an audible signal by siren, a streetcar must stop clear of any intersection and remain standing until the authorized emergency vehicle has passed, thus in effect depriving a streetcar of the right to proceed at all under the circumstances mentioned. The evidence sustains a finding that

the ambulance slowed down as it approached Chicago avenue and that it was sounding a siren signal clearly audible to other traffic and people in a nearby store. The fact that the motorman did not hear it may have been due to the noise from the air pump on the streetcar. But, from his observation, he should have seen the approaching ambulance, because it was then clearly visible. Whether the ambulance gave an audible signal by siren was a fact question for the jury. Anderson v. Gray, 206 Minn. 367, 288 N. W. 704. Likewise, the evidence presents a fact question as to whether the motorman saw or should have seen the approaching ambulance. It appears without serious dispute that the ambulance slowed down as it approached the intersection. Under the facts found by the jury, it was the duty of the streetcar to keep out of the intersection and to remain standing where it stopped on the north side of Franklin avenue. By entering the intersection under the circumstances, the motorman violated the statute and prima facie was guilty of negligence. Hence, the jury was justified in finding defendant guilty of negligence. Flitton v. Daleki, 216 Minn. 549, 13 N. W. (2d) 477.

■ The ambulance had the right under the statute to enter the intersection upon slowing down and to proceed *cautiously* past the *"Stop"* signal then against it after sounding the siren and displaying the red lights. The evidence sustains a finding that it slowed down, gave a siren signal, and displayed the red lights. Of course it was bound to proceed cautiously. *To proceed cautiously,* as used in the statute, means to go forward in the exercise of *due care* to avoid a collision. As the ambulance approached the intersection it slowed down and gave the signals required by statute; the intersection was clear so it could pass; the streetcar was standing on the north side of Franklin avenue, where the driver of the ambulance had a right to assume it would remain, as required by statute, until the ambulance had crossed the intersection; and when the streetcar did start, it was approximately the same distance from the center of the intersection as the ambulance. The evidence sustains the finding implicit in the verdict that the driver of the am-

bulance proceeded *cautiously* in entering the intersection, because he exercised due care to avoid a collision with other vehicles and under the circumstances it appeared safe for him to proceed. Consequently, plaintiffs were not guilty of contributory negligence as a matter of law.

Affirmed.

