# LEO NEES AND ANOTHER v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

December 8, 1944.

No. 33,886.

[1]Reported in 16 N. W. (2d) 758.

*O. A. Brecke,* for appellants.

*Ralph T. Boardman* and *John F. Dulebohn,* for respondent.

STREISSGUTH, JUSTICE.

Action for damages to plaintiffs' automobile-truck arising out of a collision between it and a streetcar at a street intersection in Minneapolis. At the close of plaintiffs' proof, the court granted defendant's motion for a directed verdict in its favor. Plaintiffs appeal from an order denying a new trial.

On January 14, 1943, plaintiffs' truck was traveling at a speed of 15 miles per hour southeasterly on Riverside avenue, approaching the common intersection of Riverside and Twenty-fifth avenue south with Eighth street south. Ahead of it was a streetcar which had stopped on the near side of the intersection. When the truck had approached to within 100 feet of the streetcar, the semaphore in the intersection turned to green and the streetcar started across the intersection. About the same time, with the semaphore against

them, a woman and her five-year-old child came running into the intersection from the right, or south, along the east side of Twenty-fifth avenue extended, apparently intending to board the streetcar. The streetcar stopped suddenly and without signal or warning, in the intersection proper, just beyond the semaphore.

The entire area within the intersection was icy and slippery. The width of the intersection at the point where the woman and child started to cross it was approximately 107 feet; the distance from the curb from which they stepped to the southerly and nearest streetcar track was over 60 feet. The woman and child were hidden from the motorman's and truck driver's view by a building until the streetcar and truck respectively entered the intersection.

At the time the truck entered the intersection, it was about 20 or 30 feet behind the streetcar, traveling at a speed of 10 or 12 miles per hour, astraddle one of the streetcar tracks. The driver had just turned his truck slightly to the right with a view to passing the streetcar when he observed the presence of the pedestrians. When at about the same instant the streetcar—then only 10 or 15 feet ahead—came to a sudden stop, the driver, unable likewise to stop his truck because of the condition of the street, was confronted with one of three choices: either to continue straight ahead, to turn sharply to the right in an effort to encircle the pedestrians, or to turn to the left and hit the streetcar. He chose the latter course, and the truck collided with the rear of the streetcar. As he expressed it, "My interpretation would be to slide into the streetcar or this woman and child, and I slid into the streetcar." Later he admitted that "there might have been room between the woman and the curb," but turning to the right also involved the chance of hitting her and the child. To apply the brakes and continue straight ahead would definitely have endangered them, as they were only about 25 feet ahead of the truck, and, because of the condition of the street, the truck could not have been stopped within that distance.

The Minneapolis traffic ordinance (April 12, 1938) provides:

"Street cars and trackless trolley cars, except where otherwise specifically provided, shall be governed by the same rules and regulations as provided in this ordinance for vehicles and motor vehicles, *only in so far as* such regulations apply to speed, stopping at through streets and railroad tracks, and obeying signals of semaphores and rights-of-way and shall be entitled to the same rights and benefits of the ordinance as to warning, turning and stopping signals and rights-of-way, as any vehicle or motor vehicle in the streets and highways of this city." (Italics supplied.)

Substantially the same provisions are contained in the Minnesota highway traffic regulation act. Minn. St. 1941, § 169.03, 5th paragraph (Mason St. 1940 Supp. § 2720-155[e]). See, O'Neil v. Minneapolis St. Ry. Co. 213 Minn. 514, 521, 7 N. W. (2d) 665, 669.

Another ordinance requires that, with certain exceptions not material here, "street cars shall stop on the near side of street intersections to take on or discharge passengers." (December 2, 1927, as amended October 31, 1930.)

■ Whether the facts thus stated favorably to plaintiffs would have supported a verdict for them involves questions of negligence, contributory negligence, and causation, at first glance somewhat difficult of solution, but in fact relatively simple when the respective functions of court and jury are kept in mind. That negligence and contributory negligence are for the determination of the jury where the facts are disputed is commonplace. In fact, these issues remain the exclusive property of the jury though the facts are undisputed if different minds, in applying legal criteria of due care to the conduct of the parties, might reasonably arrive at different conclusions, or might reasonably disagree as to the inferences to be drawn from the facts. Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410; 38 Am. Jur., Negligence, § 345; 4 Dunnell, Dig. & Supp. § 7048. It is only where different minds can reasonably arrive at but one result that these or any fact issues become questions of law justifying a trial court in directing a jury how they must be answered. 6 Dunnell, Dig. & Supp. § 9764.

■ While the act of the motorman in stopping the streetcar on the far side of the intersection or in the intersection proper in violation of the ordinance, under its express provisions, was not "negligence *per se* but * * * *prima facie* evidence of negligence only," such violation presented an issue for the jury's determination. A *prima facie* case imports negligence, and explanations are in order. Donahue v. Mazzoli, 27 Cal. App. (2d) 102, 80 P. (2d) 743. Even conceding the motorman's right to stop where he did, it was clearly his duty, in doing so, to exercise such caution as the traffic conditions demanded. See, Smith v. Yellow Cab Co. 285 Pa. 229, 132 A. 124. His act in suddenly stopping the streetcar in the intersection without signal or warning of any kind to the traffic behind presented an issue of fact as to his negligence, the determination of which depended upon whether the jury considered such act unnecessary and careless, or a reasonable act in the emergency, if any, created by the woman and child running for the streetcar. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945. That defendant's vehicle was a streetcar instead of a motor vehicle, as in the cited cases, would not absolve the motorman from the common-law duty to exercise due care with respect to other traffic. In the Christensen case, it was said (215 Minn. 400, 10 N. W. [2d] 411, 147 A. L. R. 945):

"* * * Having exercised its right to enter the intersection when the 'Go' signal was on, defendant could not abandon it without regard to the rights of others. The fact that the forward driver has entered an intersection may lead a driver to the rear to believe, and thus rely on the fact, that he intends to proceed across it. Entering and stopping therein causes the rear driver to be misled. Stopping in an intersection after exercising the right to proceed without giving proper signal of intention to stop is negligence as to other vehicles."

■ The reciprocal duties of the operator of a leading vehicle and the operator of a vehicle to its rear, simply stated, are these:

"* * * A leading vehicle has no absolute legal position superior

to that of one following. Each driver must exercise ordinary care in the situation in which he finds himself. The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles of his intention so to do. The driver of the following vehicle, in his turn, must exercise ordinary care to avoid collision with vehicles, both those in front and those behind him. Just how close to a vehicle in the lead a following vehicle, ought, in the exercise of ordinary care, be driven, just what precautions a driver of such a vehicle must in the exercise of ordinary care take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him, just what signals or warnings the driver of a leading vehicle must, in the exercise of due care, give before stopping or slowing up of his intention to do so, may not be laid down in any hard and fast or general rule. In each case except when reasonable minds may not differ, what due care required, and whether it was exercised, is for the jury." Cardell v. Tennessee Elec. Power Co. (5 Cir.) 79 F. (2d) 934, 936.

■ In testing acts of a motorman in the operation of a streetcar, juries and courts must necessarily take into consideration that streetcars do not have the mobility of an automobile. Both the ordinance and the statute recognize this fact in providing that streetcars shall be governed by statutory rules and regulations "only in so far as such regulations apply to speed, stopping at through streets and railroad tracks, and obeying signals of semaphores and rights-of-way." But the fact that there is no statutory rule or regulation defining the duty of a streetcar operator in a given situation cannot absolve a streetcar company or its motorman from the duty of exercising reasonable or ordinary care in operating its cars upon streets shared in common with other vehicles and pedestrians, nor permit them to ignore with impunity the presence of other vehicles upon the street. Statutory rules or standards of conduct are not exclusive and do not abrogate those defined by the unwritten law. 4 Dunnell, Dig. & Supp. § 6976; 3 Cooley, Torts (4 ed.) § 507; Armstead v. Lounsberry, 129 Minn.

34, 151 N. W. 542, 9 N. C. C. A. 828, L. R. A. 1915D, 628; Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406; Donahue v. Mazzoli, 27 Cal. App. (2d) 102, 80 P. (2d) 743.

It may be conceded that, absent any requirement of statute or ordinance that streetcars be equipped with automatic signal lights attached to their brakes as in the case of motor vehicles, no duty exists requiring such equipment. So, it may be conceded that in stopping at regular stops on the near side of intersections, there is neither statutory nor common-law duty to give any signal to vehicles approaching from the rear. But where a motorman suddenly stops a streetcar within an intersection without giving a signal or warning of any kind and without proper regard for traffic in the rear, a jury is clearly authorized to find that such act constitutes negligence unless the motorman can be absolved from a charge of negligence because acting in an emergency. The risk reasonably to be perceived defines the duty to be obeyed. Hence, here, if the motorman could reasonably have perceived that the sudden stopping of the streetcar to accommodate the pedestrians imperiled the safety of vehicles immediately in the rear, it was his duty either to continue on to the next regular stop, or, if he elected to stop within the intersection, to signal or otherwise warn such vehicles.

Defendant argues that the "emergency situation created by the sudden appearance of the lady and child running towards the streetcar, diagonally over that very icy and slippery street intersection was ample justification for stopping the streetcar in order to avoid probable serious injury to them." Such argument begs the question. The motorman did not testify in the case, and the record indicates that the only purpose of his stopping the streetcar as he did was to accommodate the pedestrians. And, even had there been evidence to support the argument, its credibility and weight would have been exclusively for the jury. The existence of an emergency excusing an act otherwise negligent is, like negligence, ordinarily a question of fact.

■ Nor can it be argued successfully that the negligence of plaintiffs' driver appeared as a matter of law. Viewing the evidence in a favorable light, he was acting in an emergency created by the appearance of the woman and child and the sudden stopping of the streetcar. He was obliged to make a sudden decision as to whether to continue on his way, turn to the right and attempt to encircle the woman and child, or turn back to the left and into the streetcar. The driver was not negligent as a matter of law in putting himself in a position of peril; hence his conduct must be gauged by the rule applying generally to sudden emergencies. It must be judged with reference to the conditions as they existed at the time of the accident; he cannot be declared guilty of contributory negligence merely because it is now apparent, in the light of results and subsequent events, that he might have avoided the accident by taking another course. 4 Dunnell, Dig. & Supp. §§ 7020, 7021; 38 Am. Jur., Negligence, § 41.

"The fact that the actor is confrbnted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement, Torts, § 296; Prosser, Torts, § 37. And whether an actor confronted with an emergency acted with reasonable care is, like other issues of due care, a question for the jury, not the court. Hansen v. Bedell Co. 126 Or. 155, 159-160, 268 P. 1020, 1021.

The following cases may be consulted as establishing the proposition that questions of negligence and contributory negligence are ordinarily for the jury in situations such as we are here dealing with: Fredhom v. Smith, 193 Minn. 569, 259 N. W. 80; Donahue v. Mazzoli, 27 Cal. App. (2d) 102, 80 P. (2d) 743; Denver Tramway Corp. v. Burke, 94 Colo. 25, 28 P. (2d) 253; Wright v. Clausen, 253 Ky. 498, 69 S. W. (2d) 1062, 104 A. L. R. 480, and note; Hill v. Knight (La. App.) 163 So. 727; Greenberg ·v. Robertson-Stelling Corp. 222 App. Div. 21, 225 N. Y. S. 829.

■ If the order directing a verdict in defendant's favor was proper, it must therefore be because the negligence, if any, of de-

fendant was not a proximate cause of the accident. Defendant is not liable unless the motorman's act caused the harm to plaintiffs, directly and immediately, or through a natural sequence of events without the intervention of another independent and efficient cause, nor unless his act was a material element or an appreciable or substantial factor in the result; that is, unless, considering all the events and the relation between his act and the acts of the pedestrians, it can be said that his act had a substantial effect in producing the result. 4 Dunnell, Dig. & Supp. §§ 7000, 7000h. But causation, like negligence, is a fact issue and for the determination of the jury, except "when the facts are undisputed and are susceptible of but one inference." Childs v. Standard Oil Co. 149 Minn. 166, 170, 182 N. W. 1000, 1002; Shuster v. Vecchi, 203 Minn. 76, 279 N. W. 841; Peterson v. Fulton, 192 Minn. 360, 256 N. W. 901; Brady v. Southern Ry. Co. 318 U. S. 792, 63 S. Ct. 995, 87 L. ed. 1158; 4 Dunnell, Dig. & Supp. §§ 7000, 7000h, 7011. Proximate cause is a question "on which any layman is quite as competent to sit in judgment as the most experienced court. In the ordinary case, it is peculiarly a question for the jury." Prosser, Torts, § 46; 38 Am. Jur., Negligence, § 351. "* * * it is in its last analysis a question of good common sense, to be solved by a practical consideration of the evidence in each particular case." Moores v. N. P. Ry. Co. 108 Minn. 100, 101, 121 N. W. 392.

■ That the negligence of the pedestrians was one of the proximate causes of the accident would not justify a directed verdict for defendant, for, "if the defendant's conduct was a substantial factor in causing the plaintiff's loss, * * * he will not be absolved from responsibility merely because other causes, such as the negligence of other persons, have contributed to the result." Prosser, Torts, § 46; Restatement, Torts, § 439.

That there may be more than one proximate cause of an injury is accepted doctrine. Where two proximate causes exist and the party injured is free from fault, those responsible for the causes may be called upon jointly or severally to answer in damages, each being liable for the whole damage, without exoneration or mitiga-

tion on account of the negligence of the other. And though such injuries would not have resulted but for the concurrence of the negligent acts of both tortfeasors, the injured person may nevertheless sue the actors jointly or severally and recover against one or all. In such case, each tortfeasor is liable for all the resultant damage, although his negligence alone might not have caused the damage, or any part of it. Shuster v. Vecchi, 203 Minn. 76, 279 N. W. 841, *supra;* Blackwell v. American Film Co. 48 Cal. App. 681, 192 P. 189; McDonald v. Robinson, 207 Iowa 1293, 224 N. W. 820, 62 A. L. R. 1419; Hansen v. Bedell Co. 126 Or. 155, 268 P. 1020. And the question of liability as between the two tortfeasors is immaterial in determining the liability of either to the injured person. J. M. Radford Grocery Co. v. Andrews (Tex. Civ. App.) 5 S. W. (2d) 1010.

Dunnell summarizes the applicable rule as laid down in recent cases of this court as follows:

"To render one liable for negligence his act or omission need not be the sole cause of the injury. Where two or more causes combine to cause an injury one is not relieved of liability because he is responsible for only one of them. To charge him with liability his negligence must be 'a' proximate cause of the injury, but it need not be 'the' proximate cause, in the sense of the sole cause. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury." 4 Dunnell, Supp. § 7007.

Responsibility for the consequences of the choice made by plaintiffs' driver should be placed, jointly and severally, upon those who put him in the dilemma of choosing between safety for himself or safety for pedestrians. Here, the jury might properly find both the pedestrians and the motorman responsible for the result: the pedestrians in negligently crossing the intersection in disobedience of the semaphore; the motorman in negligently bringing the streetcar to a sudden and unexpected stop in the middle of the intersection without signal or warning. It does not alter defendant's connec-

tion with the consequences to show that, had its negligence not caused them, similar consequences would or might nevertheless have been produced.

"* * * the question is not what would have caused the plaintiff's harm but what did in fact cause it. The test * * * is whether the defendant's acts substantially contributed to the harm complained of. If they did, then such acts are the actual cause thereof, even though other causes in fact concurred to produce the consequences and such other causes would have been entirely adequate to produce the identical consequences." Harper, Law of Torts, § 109.

From our analysis, it should be clear that the issue of proximate cause, no less than the issues of negligence and contributory negligence, was for the jury.

This court has repeatedly and consistently laid emphasis upon the leading role which the jury plays in the drama of an ordinary negligence trial. In that drama the trial judge is merely a director. Throughout the years which have passed since the jury system was engrafted as an indispensable part of the American system of jurisprudence, such concept has remained unchanged. And though, in that system, courts of last resort have been endowed with the power—through pronouncement and development of procedural law—to restrict and limit the functions of juries and thereby augment their own, they have steadfastly declined to do so, with the result that the jury's exclusive control of fact questions in law actions is declared with as much emphasis today as at any time in our judicial history. In proof, we need refer only to two recent decisions of the Supreme Court of our land: Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 63 S. Ct. 444, 87 L. ed. 610, 143 A. L. R. 967; Bailey v. Central Vermont Ry. Inc. 319 U. S. 350, 63 S. Ct. 1062, 87 L. ed. 1444.

There is a color line between issues of fact and issues of law which is just as marked as that between oriental and occidental. A trial court, confronted with a motion to direct a verdict, must

recognize that, so far as such issues are concerned, "East is East, and West is West, and never the twain shall meet," except in those rare instances where there is no conflict in facts or inferences and reasonable minds can reach but one conclusion.

Because the court below, by its order directing a verdict for defendant, improperly withdrew from the jury fact issues which belonged exclusively to them, there must be a new trial.

Reversed.

[1]Reported in 16 N. W. (2d) 745.