# LEE TRAVIS v. FLORIAN F. COLLETT.[1]

December 15, 1944.

No. 33,861.

[1]Reported in 17 N. W. (2d) 68.

*Harry W. Oehler* and *Bruce J. Broady,* Corporation Counsel, and *Ira Karon,* Assistant Corporation Counsel, for appellant.

*Bundlie, Kelley & Finley,* for respondent.

YOUNGDAHL, JUSTICE.

Appeal from an order denying a motion for judgment *non obstante* or a new trial.

Plaintiff recovered a verdict against defendant in an action for damages for personal injuries resulting from a collision between two motor vehicles on March 10, 1941, at the intersection of Marshall and Fairview avenues in St. Paul. Marshall avenue runs east and west and Fairview avenue north and south. They intersect at approximately right angles. Plaintiff was driving a 1939 Dodge panel grocery delivery truck south along Fairview, and defendant, en route to a fire in response to an emergency call, was operating a white rescue squad truck owned by the city of St. Paul in a westerly direction along Marshall. The collision occurred within the intersection. On each corner of the intersection is a *"Stop-and-Go"* semaphore. At the time of the collision, the signs were *"Go"* for Fairview avenue traffic and *"Stop"* for Marshall avenue traffic. An apartment building is located on the northeast corner of the intersection, the west wall of which is nine inches from the east sidewalk line on Fairview avenue and the front wall 25.65 feet from the north sidewalk line on Marshall. The building is located on a terrace. A retaining wall extends from the southwest corner of the building to the Marshall avenue sidewalk. At that corner of the building, the wall is 3.16 feet above the Fairview avenue sidewalk, and at a point 4.7 feet north of the Marshall avenue walk the wall is 2.72 feet above the level of the Fairview avenue sidewalk. The wall slopes gradually from that point to the grade line of the Marshall avenue sidewalk. In front of the apartment building is some thick shrubbery extending three to four feet above the level of the terrace. To the east of the building is a hedge, running north and south, which extends to the top of the terrace near the north sidewalk line on Marshall. There are several large trees on the north

side of Marshall and another tree on the boulevard on the east side of Fairview between the extended building line and the north sidewalk on Marshall.

The accident occurred about 9:30 a. m. Although the weather was cloudy, it did not affect vision. The streets were covered with ice and were very slippery. The rescue squad truck is equipped with a Mars flashing light on the front, which moves so as to cast a beam in a large figure eight. This was the only light on the truck in operation at the time of the collision. The truck is also equipped with a siren, which is not operated by the driver, but by the person seated beside him pressing a foot button on the floor near the right side of the vehicle.

The lower court instructed the jury that there was negligence on the part of defendant as a matter of law, and submitted the issue of proximate cause and contributory negligence to the jury. The court also submitted the emergency rule. Defendant assigns as error (1) the court's withdrawal from the jury of the issue of defendant's negligence; (2) the submission of the issue of contributory negligence; and (3) the submission of the emergency rule.

■ In determining whether there was error in withdrawing from the jury the issue of defendant's negligence, we are required to consider defendant's evidence in its most favorable light. So considered, the testimony shows that, when about 200 feet from the intersection, defendant saw the red light requiring Marshall avenue traffic to stop, and the red light was on from this time until the impact. He was then operating the six-ton rescue squad truck about 35 miles per hour upon the very slippery highway. He released his foot from the accelerator and coasted, slowing down a mile or two per hour until about 100 feet from the intersection. As he then put his foot back on the accelerator without pressing it, he saw plaintiff's truck just emerging from behind the apartment building traveling at a speed of 20 to 25 miles per hour. After traveling ten feet farther, defendant applied the brakes, felt his truck slip, and then released the brake and turned to the right five to eight feet before the crash. As plaintiff's truck approached the

intersection, it slowed down to some extent as if he intended to stop and then proceeded into the intersection. The left front part of the fire truck struck the left rear wheel of plaintiff's truck. Plaintiff's car came to rest on the southwest corner of the intersection, and defendant's truck came to rest on the north curb of Marshall avenue about 200 feet west of the intersection. The flashing light on defendant's truck was operating and the siren was sounding continuously prior to the collision. It was mainly upon this evidence that the court told the jury that defendant violated the statute requiring the driver of an emergency vehicle to slow down as necessary for safety and to proceed cautiously past the red or "*Stop*" signal; that the violation was without excuse or justification and defendant therefore was negligent as a matter of law. The statute, Minn. St. 1941, § 169.03 (Mason St. 1940 Supp. § 2720-155[b]), reads as follows:

"The driver of any authorized emergency vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign, shall slow down as necessary for safety, but may proceed cautiously past such red or stop sign or signal after sounding siren and displaying red lights."

It seems to us that the language of the statute is clear and unambiguous and is its own best expositor. State ex rel. City of St. Paul v. Oehler, 218 Minn. 290, 16 N. W. (2d) 765. It plainly does not impose an absolute duty upon the driver of an emergency vehicle to slow down in every situation upon approaching a red or "*Stop*" signal or stop sign. There is no reasonable explanation of the words "as necessary," unless the intent was to set up an elastic standard. The legislature apparently had in mind a somewhat relative standard of conduct, which should be governed by the facts and circumstances of each case. The driver is required to slow down *as necessary* and to proceed with caution past the red or "*Stop*" signal. To proceed with caution means to proceed with due care under the existing circumstances. Rogers v. Minneapolis St. Ry. Co. 218 Minn. 454, 16 N. W. (2d) 516. Whether the slowing down is

necessary, the extent of slowing down that is required, and whether the driver proceeded with caution or due care depend upon all the facts and circumstances of each case and are questions the determination of which rests peculiarly with the trier of fact. Rogers v. Minneapolis St. Ry. Co. *supra;* Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758. If reasonable minds may differ as to how the questions should be answered, the court should not decide them as a matter of law. Nees v. Minneapolis St. Ry. Co. *supra.* This is true not only as to undisputed facts, but also as to inferences drawn therefrom. Nees v. Minneapolis St. Ry. Co. *supra.* In the Nees case, the court said (218 Minn. 535, 16 N. W. [2d] 761) :

"* * * That negligence and contributory negligence are for the determination of the jury where the facts are disputed is commonplace. In fact, these issues remain the exclusive property of the jury though the facts are undisputed if different minds, in applying legal criteria of due care to the conduct of the parties, may reasonably arrive at different conclusions, or may reasonably disagree as to the inferences to be drawn from the facts," citing Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410.

The clear intent of the legislature was to give to the driver of the emergency vehicle a prior right to proceed through an intersection past the red or *"Stop"* sign or signal, with the limitation that the emergency driver was not to be excused from the exercise of due care, but was required to slow down as the circumstances required and proceed with caution. Whether this policy is wise or not is not for us to consider. The determination of that matter is a legislative prerogative, with which we should not interfere. The legislative intent should not be frustrated by judicial construction which limits or restricts the priority clearly intended to be given to the emergency vehicle. There may well be circumstances where the emergency driver has exhibited such a wilful disregard for the rights of others or where he has so clearly violated the statute that reasonable minds could draw but one conclusion. In such cases, the court would be required to take the issue from the jury. After

carefully reading the record before us, however, we do not believe this to be such a case. The purpose of giving the priority to emergency vehicles is obviously to enable them to reach their destination as quickly as possible consistent with the protection of life along the way. This clearly appears from Minn. St. 1941, § 169.17 (Mason St. 1940 Supp. § 2720-181), where emergency vehicles are excepted from the speed limitations of the statute. The statute reads:

"The speed limitations set forth in sections 169.14 to 169.17 shall not apply to authorized emergency vehicles when responding to emergency calls, providing the drivers thereof sound audible signal by siren, and two lighted red lights are displayed to the front. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

Although the fire truck here did not have the two lights burning as required by the statute, the court correctly charged the jury that if the Mars light was in operation there was a substantial compliance with the statute as to lights so as to bring defendant within the exception. In excepting emergency vehicles from the speed limitations, the legislature recognized the necessity of travel by such vehicles at faster speeds than that of ordinary vehicular traffic. It is true that in the instant case, the driver was coming to an intersection where vision for traffic going west on Marshall and south on Fairview was restricted by the apartment building and the other obstructions to which we have referred. We agree that a strong argument may be presented to a trier of fact that there was negligence on the part of defendant in the violation of the statute in operating the six-ton rescue squad truck upon a very slippery street approaching an obstructed corner at a speed of 35 miles an hour or slightly less against a *"Stop"* sign. But we cannot agree that reasonable minds might not differ as to whether there was a violation of the statute under these circumstances when one considers

the statutory provisions giving prior rights to emergency vehicles and the fact that the siren was continuously sounding and the Mars flashlight operating. There is also the circumstance that when defendant first saw plaintiff as he was approaching the intersection plaintiff slowed down as if to stop. This justified the jury in concluding that plaintiff was yielding defendant the right to proceed. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289; Drown v. Minneapolis St. Ry. Co. 199 Minn. 193, 271 N. W. 586; Peyla v. D. M. & I. R. R. Co. 218 Minn. 196, 15 N. W. (2d) 518. So we believe there might be a difference of opinion among reasonable minds as to whether defendant, under all these circumstances, was guilty of negligence in the violation of the statute. "It is only where different minds can reasonably arrive at but one result that these or any fact issues become questions of law justifying a trial court in directing a jury how they must be answered." Nees v. Minneapolis St. Ry. Co. *supra.*

We conclude that on the record before us the question of defendant's negligence was for the jury, and a new trial is required.

■ Although a new trial is necessary because of our holding that the issue of defendant's negligence should have been submitted to the jury, we consider the other two questions raised on this appeal, since they are certain to arise on a retrial. We are of the opinion that the contributory negligence of plaintiff was also a jury question and that the court properly denied the motion for judgment *non obstante.* Defendant contends that there was contributory negligence upon two grounds: (1) That plaintiff failed to keep a proper lookout; (2) that he violated the statute in failing to pull to the curb and stop. It seems clear from the evidence that the view along Marshall to the east is obstructed, as far as traffic approaching from the north on Fairview is concerned, by the apartment building itself, and by the hedge, shrubs, and trees heretofore referred to. The pictures received in evidence indicate that a driver traveling south on Fairview, after passing the front of the apartment building, can see to the east on Marshall, but his vision is affected to some extent by the combination of the shrubs, trees,

and hedge. The semaphore registered *"Go"* for plaintiff. He slowed down and looked to the east about 100 feet and saw no approaching vehicle. He had a right to assume that if any vehicle was farther to the east than the observation he took, it would yield him the right of way. Pearson v. Norell, 198 Minn. 303, 269 N. W. 643. We believe, under the circumstances, it was a question of fact whether plaintiff maintained a proper lookout.

Defendant further contends that plaintiff was guilty of contributory negligence in failing to pull to the curb and stop upon the approach of an emergency vehicle as required by statute. Section 169.20, subd. 5 (§ 2720-200[a, c]), provides:

"Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

\* \* \* \* \*

"This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highways."

It is conceded that plaintiff did not pull to the curb and stop. This section (as well as §§ 169.03 and 169.17, *supra*) is a part of the highway traffic regulation act (see, § 169.97 [§ 2720-292]). Consequently, these provisions should be construed together. Rogers v. Minneapolis St. Ry. Co. *supra*. So construed, the right of way ordinarily accorded to vehicles having the *"Go"* signal at an intersection where traffic is controlled by traffic control signal is restricted and qualified by the requirement that, upon the approach of an emergency vehicle giving audible signal by siren, the other vehicle must stop clear of any intersection and remain standing until the authorized emergency vehicle has passed, thus depriving

600

the first vehicle of the right to proceed at all under the circumstances mentioned. Rogers v. Minneapolis St. Ry. Co. *supra*. Defendant asserts that plaintiff was guilty of contributory negligence as a matter of law in the violation of this statute. There was testimony, however, from which the jury could find that the siren was not sounded until plaintiff was just approaching the intersection, when it was too late for him to comply with the statute. True, there is testimony to the contrary, but this conflicting testimony presents a fact issue. Nees v. Minneapolis St. Ry. Co. and Rogers v. Minneapolis St. Ry. Co. *supra*. We hold that on the facts before us the issue of contributory negligence was properly submitted to the jury.

■ The court did not err in submitting the emergency rule to the jury. There is no claim of error in the court's statement of the rule, but it is asserted that the facts did not justify its submission. The last thing plaintiff remembers was his act of approaching the intersection. He does not remember seeing defendant's truck or anything about the impact with it. A doctor testified that it is not an uncommon thing for one who has received an injury such as plaintiff received to sustain a loss of memory of "anywhere from momentary to even hours and in some cases even days prior to the accident." There is testimony indicating that as plaintiff reached the north sidewalk line of Marshall he slowed down as if to stop and then proceeded into the intersection. The jury was justified in finding that he then saw defendant's truck and was faced with a real emergency as to what course to pursue. It was too late for him then to pull to the curb and stop. He had to decide quickly whether to try to stop where he was, to turn to the right or left, or to go straight ahead. Whether his choice of action was the best or most effective under the circumstances is not the test, but, rather, what reasonably might be expected of the average prudent driver under similar circumstances. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 395, 10 N. W. (2d) 406, 147 A. L. R. 945.

We do not believe it can be said as a matter of law that plaintiff was confronted by the emergency because of his own negligence.

The evidence is in conflict. By accepting plaintiff's version, the jury might well have found that, on account of the obstructions and because the siren was not sounded until just as he reached the intersection, he was faced with an emergency through no fault of his own. It will be observed that the court did not instruct the jury that the evidence presented a situation to which they necessarily had to apply the emergency doctrine. It was left with them to determine whether it should be applied, depending on how the facts were decided. Whether the facts were such as to justify the application of the rule, whether plaintiff was confronted with the peril through his own negligence, and whether he acted as a prudent person after being confronted with the emergency were all fact questions for the jury. Under correct instructions, the emergency rule was properly submitted to the jury. Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, *supra;* Nees v. Minneapolis St. Ry. Co. *supra.*

Reversed and new trial granted.